The next case today is United States v. Adams-Joel Forty-Febres. Appeal number 182106. Attorney Zayas, you may proceed. Attorney Conner, please mute your audio and video device. May I please record? Yes, proceed please. Thanks. The first point I want to address is the abuse of discretion by the Honorable District Court in the case. Regarding the allowance of the authorization for the presentation of the co-defendant, David Alexander Vasquez, as a defense witness for my client, contrary to what was represented to the Honorable Judges by the government in its brief, this was not a trumped-up petition to the court. This petition is not in emptiness. This petition is due to the fact that this co-defendant freely and... Let me go back. This case, the trial in this case, began on May 14, 2018. On May 16, 2018, this defendant decided to change his plea to one of guilt, and during his change of plea hearing, he both freely and voluntarily stated that, and he turned, I was the trial attorney in that case, the defense attorney in that case, and he turned and freely and voluntarily stated to the Honorable District Judge, Judge, may I say something? Yes, of course. I don't know this man, and he was referring to my client, Mr. Adams, for defense. When that situation occurred, and later on, after that hearing was held, we came back, and I asked the court for this co-defendant to become a defense witness in the case. And it is very important to emphasize the fact that in this case, this defendant, contrary to my client, was directly connected to the scene of the crime because his DNA was found in one of the vehicles, in the first vehicle that was carjacked in the case. His DNA was found by the DNA technician from the FBI, and on that matter, we also requested during that juncture to also the testimony of DNA technician, Joshua Lassier, and the FBI Special Agent, Joshua Lassier, and the FBI DNA technician, Christian Brady. Those, sorry, those testimonies were also denied by the Honorable Court. A situation occurred, a hearing was held pertaining to the willingness of that co-defendant to become a defense witness in the case, and where he raised his right to a, to his, sorry, he raised his Fifth Amendment right. In that juncture, we stated to the court that we had no problem with that because the court had already, beforehand, the court had ordered an expedited PSR report due to the fact that this defendant, indeed, had already pled guilty in 2018 for the same crime, for another carjacking. Again, the petition was denied by the court. It is very interesting to underscore the fact that even when this, our request was denied, in that request, again, I want to also emphasize that we also requested a brief continuous due to the fact that because of the fact that the court had already ordered an expedited present this report, this defendant, this situation occurred on May 16th, and this defendant, indeed, was sentenced on May 31st. Therefore, there was no undue delay in the case from just to allow a brief continuous in the case for the case to continue later on. As a matter of fact, we submit that our Rule 29 motion, when our Rule 29 motion was filed, that occurred. All right, counsel, listen, please. Judge Thompson has been trying to ask you a question. Okay, slow down and listen. Okay, Judge Thompson. I just know you will wait. A point of clarification, please. The co-defendant was represented by counsel throughout. Yes, Your Honor. My brother counsel, Jason Gonzalez. And was he represented by counsel at the point when you were making a request for him to testify? Originally, no, because the change of plea hearing had already been held. However, the court called him back and called back, asked the marshals to bring back the defendant to discuss the matter, and that is when they conferred the brother counsel, Gonzalez, with that defendant, the other co-defendant, and the decision was reached by the court to hold a hearing on the matter. And that is where that defendant raises Fifth Amendment rights. Okay, so isn't it fair to assume that he raised the Fifth Amendment right after being advised to do so by counsel? No, I understand. I really do understand the situation. However, that is why I am emphasizing the fact that beforehand the judge, because of the fact that this individual. Five minutes remaining, counsel. Five minutes. Mr. Zayas, please, I have a question. So, he invokes the Fifth Amendment on advice of counsel. The district court denies your motion on the basis that he has invoked his Fifth Amendment right and there is some possible jeopardy. So, what did you hope to accomplish by putting him on the stand? It sounds to me like, no, you wait. It sounds to me like you want to put him on the stand so he will take the Fifth Amendment. You don't have any right to do that. Well, then, if I may. Yes, now you may answer. Then I could have maybe impeached him with his prior testimony as to the fact that he stated that he didn't knew my client. Moreover, I submit that because of the situation of the expedited sentencing hearing. But taking the Fifth, you can't impeach when you take the Fifth because you're not answering anything. So, there's nothing that he said that's impeachable. But I submit that that might be true. However, I submit that we don't know the answer as to which that witness will have answered during my cross-examination or my direct examination as a defense witness. We don't know the answer because the district judge did not allow me to go through the process. And again, this defendant was sentenced on May the 31st, so there was no jeopardy at all regarding his Fifth Amendment rights. And we don't know the answer because of the situation of the abuse of discretion that we're raising. Moreover, at the time that we filed our Rule 29 motion, this defendant had already been sentenced. Our motion was filed on June 29th. That is the situation. That is our argument regarding the abuse of discretion. We're now going to the matter of inconsistent verdicts. We submit that in this case, it is of clear fact that my client was acquitted of the first carjacking that was charged against him. However, he was found guilty on the second case. We submit that in that first case, the evidence on the record is clear on the fact that the first carjacking, the car that was carjacked in that first instance, it's clear that the car that was used during the second carjacking. Therefore, going to the rationality of the jury determination as to the conviction on the case on the second carjacking, we submit that it is not rational because, and that was duly addressed in our Rule 29 motion, the fact that this first victim called Pamela Mena, she specifically stated during my cross-examination that she overheard when she was carjacked, the police arrived and she overheard that the police were talking about another carjacking and they specifically mentioned her plate number. So, in addition to that, the other co-defendant as well justified the description of the other car. So, what I'm saying is that how can a person be found guilty of, this is my defendant in this case, be found guilty of the second case, charging him that he arrived at the crime scene with a car that was carjacked and a crime for which he was acquitted in the first case. It doesn't make any sense. That is why that goes to that specific point. Okay, counsel, do you have any other arguments? We understand the point you're trying to make. No. Okay, any other questions? No. Okay, thank you. We'll hear from your opponent. Good morning. May it please the court, this is Greg Conner on behalf of the United States. Now, it's no surprise and no secret that a sufficiency challenge is oftentimes a bit of a long shot. That's what this court said in Corbett and that's what this case is. It's an uphill battle and 40 can't make the climb. So, this court should uphold the jury's verdict because there was sufficient evidence and because Vasquez had a right not to testify in light of a reasonable fear of self-incrimination. Now, briefly regarding sufficiency, as we point out in our brief, Muriel's testimony alone does most of the work here. She testified that 40 exited the mint green Corolla, pointed a gun at her and forcibly took her car, as her young son was in the backseat. That's a carjacking and when combined with the government certification, which were exhibits 19A and 19B, showing that the car was manufactured in Japan, that suffices for the elements of carjackings. Counselor, did the government conduct any forensic analysis to determine if there was any forensic evidence that tied this defendant to either of the cars? The government did conduct several manners of forensic analysis and there wasn't, for example, DNA or fingerprint evidence that tied him to these crimes. It was more his distinctive characteristics. So, Pamela Mena described that he had a very distinctive rat tail that she remembered and then the government introduced evidence of a picture with that very distinctive characteristic. Apparently, the jury didn't believe Mena beyond a reasonable doubt. I don't think under the Supreme Court's cases, we can say that. The Supreme Court has said that there can be acquittals on some counts, but not all counts for reasons of compromise, mistake, confusion or lenity. Actually, not only that. The court has specifically determined that, and this is the Cianci case at page 91, that the acquittal on certain counts plays, quote, no role in a determination of the sufficiency for the counts of conviction. I'm not talking about sufficiency. I'm just saying it seems a little odd for you to rely on Mena's testimony rather than on Muriel's when they convicted on the Muriel's car theft. Okay, and my point is that under Cianci, this court should consider both Mena's testimony and Muriel's. And it is Mena that testified specifically regarding the rat tail that the jury saw in the picture, but both victims described a dark-haired individual with disheveled hair. They both used the word trienia, which is a word on this island that was at issue for a while in the trial. And not only that, when both— What does that mean? What does trienia mean? I looked it up, but what does it mean on the island? There's some subjectivity, but the summary we used in our brief is that it's a person with lighter skin tone than a black person. And Pamela Mena identified herself as a black person. And then she pointed to a law enforcement agent who was white and said that it's in between our skin tones. And similarly, Delmarie Muriel said that she herself was trienia, although a darker shade, and that Forty was a lighter shade of trienia than her. So I think what's important about that testimony is that not only did these victims describe Forty similarly, when they were—and the jury could assess those descriptions when they were testifying, Forty was in the courtroom. So the jury was able to hear their descriptions and observe Forty and determined that he was the perpetrator, at least of the one carjacking. So and not only that, they both placed him in Canabanas in a small window of time on the same night. The methods of carjackings were similar. And this court said in Velazquez-Aponte, which was, I think, a weaker case because the victim in Velazquez-Aponte wasn't able to see the carjacker. He had a gun in his back. Both victims here were able to view Forty. They both identified him based on seeing his face. So I think taken as a whole, there was more than sufficient evidence to convict Forty of the Muriel carjacking. And not only that, something that this court has emphasized, has been repeatedly decided, is that when there is sufficient evidence, that is the— Five minutes remaining. That's the requisite protection against jury irrationality. And some perceived inconsistency is just not reviewable on appeal. That's not a bona fide appellate claim. So I think based on the evidence at trial, Forty should lose on both his first and third argument. And similarly, with the final argument, the invocation of the Fifth Amendment, Vasquez had reason to be worried. And I want to point this court to pages 55 to 56. When Vasquez made that statement in open court, what was the government's response? There was a bit of concern. So first of all, there was some discussion about the obvious fact that Vasquez did not want to be considered a snitch. He worried about his safety in prison. And that took up a fair amount of the discussion of the back and forth. But the district court determined that during the change of plea hearing, it did not alter the fact that Vasquez was pleading guilty. So the district court allowed the—determined that he was knowingly pleading guilty. And then the district court, when Forty tried to call Vasquez as a defense witness, the district court said that there were several options for how that could be, how he could risk self-incrimination and focus specifically on perjury. And I think this is consistent with this court's rationale in the Zerpillo case. In the Zerpillo case, the co-defendant filed an affidavit essentially saying the main defendant had nothing to do with the drug sale and conspiracy in general. And this court agreed with the district court that that risked a perjury charge because that was contrary to the evidence at trial. Similarly here, he made a statement that essentially was that he didn't know Forty and they didn't commit this carjacking together. And again, with all the evidence we alluded to with sufficiency, that statement is contrary to the evidence at trial. Now, really quickly, because this is Vasquez's right, and so it's not just— I think it's not just an assessment this court has to make based on what the district court said. It's our position, and we include this in our brief, that there was a lot more at play here. This court has stressed in the past that the risk of further incrimination can come from substantive charges by the federal Department of Justice. It can come from sentencing repercussions by a departure or variance. So, Counselor, there's no doubt that Vasquez had a lot of exposure to all kinds of risks, so that isn't even the thrust of what I'm asking you. Did it cause you pause? Did it cause you to explore the possibility that he was not the co-defendant? Not at all. Not at all. And I've seen this in other cases. I know this court has. For example, in Zerpelo, it is common for especially subservient co-defendants to try and help out friends of theirs. Again, that's what happened in Zerpelo. There may have been a Freudian slip in Forty's brief because he acknowledged that they have contact in incarceration. So there are a lot of reasons. And actually, I think it's the Castro case where this court quoted the district court giving the variety of reasons that a defendant might make this statement. And this court listed loyalty, ignorance of the repercussions, or fear from intimidation. There are a lot of reasons that a co-defendant is going to make a statement like this. Was there any other evidence that these people knew each other? Any other evidence other than the testimony of the victims? Yes. I think the evidence is primarily the testimony of the victims. And we know that Vasquez was in the car because he left his underwear in there. And there was DNA evidence from that. And both victims testified that they saw Forty and that Forty was one of the carjackers. And I think that's enough of a connection to satisfy this court to uphold the verdict. Okay, any further questions? No. Thank you, counsel. Thank you. That concludes argument in this case. Attorney Zayas and Attorney Conner, you should disconnect from the hearing at this time.